UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

CONNIE OVERSTREET, Personal Representative
of the Estate of Paul Richard Bliven, deceased,

        Plaintiff,

v.

**ONTONAGON COUNTY,** a corporate subunit of Government,
**SHERIFF DALE RANTALA, JASON DEVERE CLINESMITH,
GIRARD WALDROP, DOUG WILLIAM ROBERTS, JOHN JASON
HASENBERG** in their individual and official capacities,
        Defendants.

Case No.
Hon.
Mag. Judge

| |  |
|---|---|
| THE MICHIGAN LAW FIRM, PC<br>RACINE M. MILLER (P72612)<br>Attorneys for Plaintiff<br>135 N. Old Woodward Ave, Ste 270<br>Birmingham, MI 48009<br>Phone: (844)464-3476<br>Fax: (248)237-3690<br>racine@themichiganlawfirm.com | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

## Table of Contents

JURISDICTION, VENUE AND PARTIES ................................................................1

GENERAL ALLEGATIONS ....................................................................................4

COUNT I - DEFENDANT COUNTY AND SHERIFF ............................................8

VIOLATION OF FEDERAL RIGHTS – MONELL LIABILITY ..............................8

COUNT II – FEDERAL UNITED STATES CONSTITUTIONAL VIOLATIONS BY INDIVIDUAL DEFENDANTS ......................................................................... 11

COUNT III - STATE LAW VIOLATION-- NEGLIGENCE ................................. 13

DAMAGES .............................................................................................................. 15

DEMAND FOR TRIAL BY JURY ..........................................................................17

NOW COMES the Plaintiff, Connie Overstreet, Personal Representative of the Estate of Paul Richard Bliven, Deceased, by and through counsel, The Michigan Law Firm, PC, by Racine M. Miller, and in support of her Complaint for damages and Demand for Jury states as follows:

### JURISDICTION, VENUE AND PARTIES

1. This is an action seeking to redress the wrongs committed in violation of the constitutional rights of Paul Belvin, by Ontonagon County, the Ontonagon County Sheriff, and various officers/personnel employed at the Ontonagon County Jail, pursuant to 42 U.S.C. § 1983.

2. This action is brought pursuant to federal statute at 42 U.S.C. § 1981, 1983, 1985 and 1988, for deprivation of rights secured by the federal Constitution at the IV, VIII and XIV Amendments.  Jurisdiction is founded upon 28 U.S.C. § 1331, 1343(1), (3) and (4).  Plaintiff further invokes the pendant jurisdiction of this Court to adjudicate state law claims.

3. Plaintiff Connie Overstreet, is a resident of the City of Downers Grove in the State of Illinois and is the daughter of the deceased and the duly appointed Personal Representative of his estate and brings this action under the Wrongful Death Statute at M.C.L. 600.2922.

4. The Plaintiff's decedent, Paul Bliven (hereinafter referred to as "Bliven" or "decedent") was incarcerated at the Ontonagon County Jail

during the time of the events giving rise to this complaint and was a pre-trial detainee as more fully described herein.

5. The amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars.

6. All events, transactions, or occurrences pertinent hereto, transpired within the County of Ontonagon.

7. Defendant Ontonagon County (hereinafter referred to as "County") is a municipal corporation organized and existing by virtue of the constitution and laws of the State of Michigan who is responsible for providing professional and responsive health care and protection from unreasonable risk of harm for those individuals in their care and custody at the Ontonagon County Jail.

8. Defendant Ontonagon County is liable under state and/or federal law for all injuries proximately caused by: intentional, willful and wanton, reckless, deliberately indifferent, grossly negligent and/or negligent acts and/or omissions committed pursuant to customs, policies, usage and/or practices which deprive citizens of their rights, privileges and/or immunities secured by the Constitutions and laws of the United States and/or of the State of Michigan.

9. Defendant Sheriff DALE RANTALA, at the times of the events at issue in this case, was the duly elected Sheriff of Ontonagon County, an

Ontonagon County agent, and/or employed by Defendant Ontonagon County, head of the County Sheriff's Office, and was a final policymaker who worked to develop jail plans and policies affecting Plaintiff's decedent at the time of Plaintiff's decedent's injury. As Sheriff, his responsibilities included the care, custody, protection and control of all inmates, as well as the supervision of all staff at the Ontonagon County Jail and was acting under color of law and within the scope of his employment, and is sued in both his official and individual capacities. He is a resident of the State of Michigan.

10. Defendant Jail Administrator JASON CLINESMITH, at all relevant times, was a supervising deputy, an agent and /or employed by Defendant Ontonagon County and acting under color of law and within the scope of his employment. As the Ontonagon County Sheriff's Office Jail Administrator and a final policymaker for Defendant Ontonagon County, with respect to all matters concerning the Ontonagon County Sheriff's Office and all of its divisions, including the Ontonagon County Jail and is being named for the causes of actions in this complaint in both his official and individual capacities. He is a resident of the State of Michigan.

11. Defendant GIRAD WALDROP was, at all relevant times, a supervising deputy, an agent and /or employed by Defendant Ontonagon County and

acting under color of law and within the scope of his employment. He is a resident of the State of Michigan.

12. Defendants DOUG ROBERTS and Defendant JOHN "JJ" HASENBERG were at all relevant times, a deputy, agent and /or employed by Defendant Ontonagon County, and acting as corrections officers, under color of state law and within the scope of their employment. Each Officer Defendant participated in and/or had knowledge of and failed to prevent the death of Mr. Bliven.  They are each a resident of the State of Michigan.

13. At all times relevant to this complaint, Defendants were acting within the scope of their employment and under color of law.

14. At all material times, Defendant Ontonagon County employed all Defendant officers and is liable because its policies, practices, and customs, which were defective, resulted in injury to Plaintiff.

## GENERAL ALLEGATIONS

15. On May 26, 2021, Defendants were the exclusive custodians of Plaintiff's decedent following his arrest and were charged with the responsibility of monitoring him in order to assure his health would not be placed in jeopardy and that if he needed medical aid, he would receive it.

16. On May 22, 2021, Bliven was assessed by Girard Waldrop on intake, where it was discovered that Bliven was either intoxicated by a substance or had an apparent and obvious mental condition as Bliven stated he needed to

4

be checked for radiation from his microwave, felt hopeless this day, was currently being treated by a mental health professional, had been hospitalized before but does not take his prescribed medication.

17.   Rather than housing Bliven in the detox cell, Waldrop "overrode the business rule" and placed Bliven in the "Capious" [sic] cell, which contained a tv, fan, cord, and window - contrary to prisoner housing standards where Bliven foreseeably used the fan cord and window jamb to hang himself.

18.   Bliven was allegedly being held in the "capias" cell awaiting arraignment because new inmates are housed separate from the general population until they test negative or show no signs of COVID-19 for 14 days.

19.   Bliven was booked on May 22, 2021, but was not provided a COVID test.

20.   Bliven demonstrated objective signs of intoxication or mental health problems, but because the door to the detox cell was inoperable, instead of being housed in the detox cell, Bliven was placed in the "Capious" [sic] cell (with two (2) security cameras) a mere 40 feet away from the detox cell that officers were working on.

21.   Bliven reported to his attorney on the recorded jail phone line that he'd rather just lay down in his cell and die, that God had abandoned him and that "I'm not getting out anyways, so, I'll die in here."

22. Although Defendants monitored and heard the call, nothing was done to prevent the suicide.

23. On May 26, 2021, at 14:00 hours, Clinesmith decided to work on the detox door because it was inoperable due to the metal door jamb swelling and causing the door to not open properly.

24. Officer Doulas Roberts was also in the detox holding cell working on the cell door lock rather than performing his duties as desk officer.

25. Neither Clinesmith nor Roberts provided any "capious" [sic] cell inspection until they were done grinding on the detox door.

26. On May 26, 2021, at 14:30, Deputy Hasenberg arrived for shift but failed to conduct any cell inspections; he rather looked into what was going on in the detox area because of the grinding noise.

27. Because Hasenberg decided to help with the door rather than conduct his shift's cell-check, it was not until 14:45 – when deputy Hasenberg entered the office to check his flashlight battery – that anyone finally looked at the live feed and noticed that Bliven was dead.

28. The capias cell has two live video feeds that are visible from the front desk monitors, and there are other cameras placed throughout the jail to assist the desk officer with monitoring.

29. Despite this, there is no policy regarding monitoring of inmates through the camera feeds, therefore Defendants did not notice anything

6

wrong on the "Capious" [sic] cell live feed security camera until 14:45 hours, resulting in the death of Bliven.

30. Defendant Doug Roberts was the desk officer and for want of policy directive, did not monitor the display of cells despite it being his responsibility, resulting in the death of Bliven.

31. By the acts and omissions of Defendants, all of them and each of them, Plaintiff's decedent was left to die under circumstances set forth in greater detail herein.

32. Defendants, all of them jointly and severally, are directly liable to Plaintiff's decedent for promulgation of or acquiescence to policies, practices, customs, and/or procedures which caused or contributed to the constitutional deprivation suffered by the Plaintiff, particularly as there was a special custodial relationship between Plaintiff's decedent and the County.

33. The acts and/or omissions of the individual Defendants, jointly and severally, constitute gross negligence, deliberate indifference, willful and wanton conduct, callous recklessness, wanton negligence, and deliberate and intentional disregard of the proper execution of their operational duties as County employees. As such, these Defendants, jointly and severally, are directly liable for the tragic results of their improper, non-discretionary activities.

34. Defendant County is also liable for the tortious conduct of its officers, employees, and agents, wherein said officers, employees, and agents were acting during the course of their employment and within the scope of their authority while engaged in activities which are carried out in a grossly negligent nature.

35. Defendant County is also directly liable for its failure to properly train, retain, investigate, monitor, discipline, and/or supervise the individual Defendants in the proper execution of their duties and for failure to promulgate and enforce proper procedures, guidelines, practices, and policies to minimize as far as practical all foreseeable risks of harm.

## COUNT I - DEFENDANT COUNTY AND SHERIFF VIOLATION OF FEDERAL RIGHTS – MONELL LIABILITY

36. Plaintiff hereby incorporates by reference the preceding paragraphs as though set forth fully herein.

37. The Defendants owed duties to Plaintiff's decedent which included the duty to provide safe housing and to conduct reasonable and adequate cell checks, the duty to implement and monitor an adequate policy and training program for all officers and deputies working at the County Jail so that they would be capable of making decisions about the need for monitoring and medical care which arose when there was not a health care professional present.

38. These Defendants failed in these above duties to adequately train detention facility/jail personnel, and historically have had a policy, custom, and practice of failing to implement an adequate camera monitoring policy and training program to properly train detention facility/jail personnel.

39. These Defendants adopted, ratified, and/or implemented the policies, practices and procedures which denied Plaintiff's decedent the right to safe housing and did so with deliberate indifference to Bliven's serious medical needs, thereby violating Bliven's constitutional rights.

40. The acts and omissions of the Defendants taken pursuant to the de facto policies, practices and procedures, adopted, ratified, and/or implemented by Defendants, impermissibly condoned and allowed for the denial of proper and secure housing, monitoring, medical care and treatment to residents of the Ontonagon County Jail, such as Plaintiff's decedent, which amounts to deliberate indifference in the denial of such detainees' civil rights as are guaranteed by the Constitution of the United States.

41. The aforesaid acts and omissions of Defendants were all committed under color of law and under color of their official authority as a County, County Department, County officers/employees, and/or peace officers.

42. The acts and omissions of the Defendants constituted deliberate indifference to the serious and apparent medical needs of Plaintiff's

decedent in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States and, hence, are actionable under 42 U.S.C. §1983.

43. Despite Defendants' knowledge of the said illegal policies, practices and procedures, Defendant's supervisory policy-making officers and officials or employees of defendant County, as a matter of policy, practice and procedure, said Defendants:

    a. failed to take appropriate and necessary steps to discover and determine that said policies, practices and procedures had and would continue to result in injuries to Plaintiff's decedent and those similarly situated; specifically, Defendants failed to have a policy of monitoring the live camera feed from the cells, and assessing serious medical need or illnesses common to an ordinary person.

    b. failed to discipline and properly supervise the individual officers, deputies, and employees who engaged in the said acts pursuant to these policies, practices and procedures which resulted in Plaintiffs injury;

    c. failed to effectively train and supervise the said individual Defendants with regard to the proper constitutional and statutory limits of their authority;

    d. ratified said policies, practices and procedures which caused Bliven's injury through their deliberate indifference to the effect of said policies, practices and procedures on the constitutional rights of citizens such as Plaintiff;

    e. failed to formulate or adopt appropriate policies, practices and procedures to instruct and train employees and jail personnel in the implementation of such policies, practices and procedures to protect inmates similarly situated to Plaintiff's decedent;

    f. adopt and ratify policies, practices and procedures which constitute a violation of the United States Constitution, or played a significant causal role in denial of the constitutional rights of Plaintiff's decedent.

44. As a result of Defendants' actions and omissions, Plaintiff's decedent has suffered damages which include but are not limited to the following: great pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, and death.

### COUNT II – FEDERAL UNITED STATES CONSTITUTIONAL VIOLATIONS BY INDIVIDUAL DEFENDANTS

45. Plaintiff hereby incorporates by reference the preceding paragraphs as though set forth fully herein.

46. All the Defendants, at all times herein, owed Plaintiff's decedent the duty of protecting his federal constitutional rights, including the following guaranteed rights:

   a. The right to be securely housing while in custody of Defendants;

   b. The right to be free from bodily harm and injury caused unjustifiably while in custody of Defendants; and

   c. The right not to be subjected to cruel and unusual punishment.

47. The individual Defendants owed a duty to Plaintiff's decedent as a resident detainee of the County Jail to provide him with appropriate and adequate housing along with reasonable medical care upon being told of his medical complaints, including but not limited to:

   a. proper monitoring of Bliven's health and physical condition;

11

    b.   regularly examining Plaintiff's decedent for signs and symptoms of medical illness or disease after he had made complaints regarding such;

    c.   detecting signs and symptoms of Bliven's serious health condition and suicidal ideation and providing timely intervention of the same.

48. Despite the individual Defendants' knowledge of the ongoing suffering of the Plaintiff, they refused to take reasonable steps to provide for Bliven's safety and provide medical attention, at variance with constitutional standards as follows:

    a.   failing to take heed of the seriousness of Bliven's complained of condition when they knew or should have known that the Plaintiff's decedent was suffering from a serious medical condition, in this case, mental disability and suicidal ideation, which can be potentially fatal if the patient is not properly attended to;

    b.   failing to have Plaintiff's decedent evaluated by a mental health professional within a reasonable time of his registering complaints of his condition while in the custody of Defendants, when he was suffering from a potentially fatal medical condition;

    c.   failing to have Plaintiff's decedent evaluated at the jail by a nurse, doctor and/or emergency medical service technician when he was in need of immediate medical attention and supervision.

    d.   failing to transport Plaintiff's decedent to a medical facility within a reasonable time of his complaints which would have successfully treated his condition without resulting in his death;

    e.   failing to monitor and communicate the status of Bliven's condition when he was suffering in his cell and in the custody of the County Sheriffs Department;

49. These Defendants, acting under color of state law, violated these rights by housing Plaintiff's decedent in a cell that contained materials which could be misused and are specifically prohibited to be in a cell and which were ultimately used to kill Bliven.

50. These actions on the part of all Defendants violated the United States Constitution, particularly the Fourth, Eighth and Fourteenth Amendments, which is actionable pursuant to 42 U.S.C. §1983.

51. As a direct and proximate result of the individual Defendants failing to respond to Bliven's requests for and need for medical assistance, Plaintiff's decedent has suffered damages which include but are not limited to the following: great pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, and death.

COUNT III - STATE LAW VIOLATION-- NEGLIGENCE

52. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth.

53. The individual Defendants owed a duty to Plaintiff's decedent as a detainee of the County Jail to provide him with appropriate and reasonable medical care consistent with the appropriate community standard, including but not limited to:

    a. Proper monitoring of his health and physical condition;

    b.   Proper, appropriate and necessary diagnosis, treatment and care of his medical complaints;

    c.   Regularly checking on Plaintiff's decedent for signs and symptoms of medical illness; and

    d.   Detecting signs and symptoms of medical illness and attending to his complaints by referring him to the appropriate medical professional.

54. Despite the individual Defendant's multiple contacts with Plaintiff's decedent, the individual Defendants' refusal to take reasonable steps to monitor him, house him safely, and provide him medical attention and were grossly negligent in the following particulars:

    a.   Failing to provide Plaintiff's decedent with adequate mental health care and attention even though he consistently complained of his distress;

    b.   Failing to securely house Providing Plaintiff's decedent;

    c.   Housing Plaintiff's decedent in a cell with dangerous and unauthorized items;

    d.   Failing to monitor Plaintiff's decedent after he had been placed in the dangerous cell;

    e.   Failing to check with a person with competent training and/or ability to diagnose Bliven's condition;

    f.   failing to investigate and/or communicate the inoperability of the detox cell door; and

    g.   Failing to follow the procedures implemented by the jail and/or failing to implement the proper procedures to take care of inmates such as the Plaintiff's decedent.

55. Based on the above facts pled in avoidance of governmental immunity, individual Defendants' conduct is exempt from governmental immunity pursuant to M.C.L. 691.1407, because the individual Defendant's conduct in improperly housing Bliven, then providing inappropriate supervision and failing to monitor the Plaintiff' decedent was grossly negligent in that such conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury to Plaintiff's decedent resulted.

56. As a direct and proximate result of the individual Defendants' gross negligence, Plaintiff's decedent sustained the damages previously enumerated which are incorporated by reference herein, and, therefore, Plaintiff requests damages compensable under Michigan law.

### COUNT V – Wrongful Death

57. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth.

58. Plaintiff brings this action because the death of or injuries resulting in the death of Paul Bliven have been caused by the wrongful acts and negligence of each Defendant pursuant to M.C.L. 600.2922.

### DAMAGES

59. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth.

60. As a direct and proximate result of the acts and omissions complained of herein, Plaintiff's decedent suffered:

    a. Loss of life; and

    b. Wrongful death and attendant losses.

70. As a direct proximate result of the acts and omissions complained of herein, Plaintiff and the heirs at law of Plaintiff's decedent have suffered:

    a. Loss of a loved one;

    b. Loss of support;

    c. Loss of society and companionship;

    d. Loss of services;

    e. Hedonic damages;

    f. Mental suffering and sorrow;

    g. Funeral and burial expenses;

    h. and any other imaginable loss, damage, injury or expense;

WHEREFORE, for all the above reasons, Plaintiff demands judgment against Defendants, jointly and severally, in whatever amount he is found to be entitled, as determined by the trier of fact, together with punitive and/or exemplary damages, costs, interests, attorney fees, including but not limited to such attorney fees as are allowable under 42 USC §1988.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC

/s/ Racine M. Miller
RACINE M. MILLER (P72612)
Attorneys for Plaintiff

Dated: May 24, 2023

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, by and through the undersigned attorneys, and hereby demands a trial by jury of each and every matter at issue in the above-entitled cause.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC

/s/ Racine M. Miller
RACINE M. MILLER (P72612)
Attorneys for Plaintiff
135 N. Old Woodward, Ste 270
Birmingham, MI 48009
Phone: 844.464.3476
Fax: 248.237.3690
racine@themichiganlawfirm.com

Dated: May 24, 2023